Good morning and welcome to the Ninth Circuit. Before we get started I know we have one counsel joining remotely. Can you hear me sir? Yes I can thank you your honor. Great we can hear you and we can see you so I think we're good to go. We have a number of cases, three cases that have been submitted on the brief so I'll just recite those for the record. Rojas Lozaro v. Garland, Tikus Galeas v. Garland and Martinez v. Garland and that leaves us three cases for oral argument this morning. We will start with William Fletcher v. the Idaho Department of Corrections. This is case number 21-35128. I just remind counsel that your your timer is showing you the full time that you have left so if you are the appellant and want to reserve any time if you want to let us know we'll we'll do our best to try to help you out with that and with that we'll start with argument and so Mr. Woofter I think you're going first. Thank you Judge Forrest may it please the court. I'm Daniel Woofter appearing on behalf of Plaintiff Appellant William Fletcher. I'd like to reserve three minutes for rebuttal please. Mr. Fletcher has suffered and continues to suffer humiliation and ridicule because the state cast him as a sex offender even though all now agree he was not convicted of a sex crime. He is entitled to the injunctive relief he seeks because in the words of the Supreme Court's decision in Vitek the state's requirement that he undergo mandatory behavior modification programs have engendered adverse social consequences to him. According to the state Mr. Fletcher is only entitled to adversarial process before the state formally labels him a sex offender to meet the stigma test that applies in government defamation cases. But the state does not dispute that the Supreme Court has never applied that test in the prison or parole context and in any event the state took the formal public position in its own briefing to Idaho's courts nearly ten years ago that Mr. Fletcher should not be permitted to serve out his sentence on probation because he would not admit to being a convicted sex offender and quote was convicted of a sex offense and therefore considered a sex offender and quote he is entitled to summary judgment on his claim for injunctive relief. This court asked what effect the end of Mr. Fletcher's probationary term next month would have on the case. Given how clear the violation is here the court could enjoin the remainder of his sex offense related probationary terms now pending this court's decision but even if his injunctive relief claims become moot he still has live damages claims and all he seeks is leave to Mr. Fletcher could obviously name the correct defendants and plead damages claims the state does not even try to argue otherwise and thus waives any objection to that relief. For Mr. Fletcher's parole related damages claim the state only argues that he failed to sue Sandy Jones and Karen Clifford in their individual capacities and that in any event they are entitled to absolute immunity. Even setting a sign that the district court should have read the complaint liberally as brought against Ms. Jones and Ms. Clifford in their individual capacities here too it would not be futile for Mr. Fletcher to amend because quote parole officers are not entitled to absolute immunity for conduct arising from their duty to supervise parolees and quote and even if these are the wrong defendants for that kind of claim Mr. Fletcher could easily name the correct ones. I'm happy to take the court's questions. Well I have some questions about the new documents that have been submitted to the court. Sure I'm happy to address any questions regarding the new documents submitted to the court last Friday. Do you have objections to it being admitted? I don't object to the this court taking judicial notice of those documents any more than the state should object to this court taking judicial notice of their briefing in the Idaho State Courts. But what we would object to is the state relying on these to create new arguments that were not raised in its briefing in this case. And for those arguments we did not have a chance to address them. So you know we have of course no issue with the court taking judicial notice of these documents. What these judicially noticeable documents do or do not provide in terms of what it means for this case can't go beyond the scope of what the state argued in its response brief in opposition. Yeah well that was a lot of boilerplate counsel. I'm not exactly sure how it helps us here. But let me let me ask let me go ahead and ask my question. So one thing is I'm a little disturbed that neither side put the put the plea agreement in the in the record because it does seem to me to be to be relevant because it raises the question that that he has consented to all of this that he had he knew from the outset that he was going to be treated for psychosexual evaluations and treatment and that it would also be a condition of his probation. And if so even assuming that we find that there's a that there is a liberty interest here at stake it seems that he's got all that all the process that was due. I don't think that's correct your honor the state did not argue that in its briefing and response. I understand the argument feels very technical at this point counsel. I've got a document in front of me that says that your client knew that his that he was going to be treated this way in prison and he would be treated this way on probation. So where's the due process violation? I don't think that the document did clearly set that forth for Mr. Fletcher your honor. It does contain boilerplate and you know yeses and noes that he that he acknowledged for before he was going into his prison. Let me read you the let me read you the paragraphs that I'm I'm interested in. Paragraph four the defendant is to cooperate with the obtaining a psychosexual evaluation with Dr. Michael Johnston. The offer is not contingent on the defendant's risk to reoffend but the defendant must be amenable to treatment. Five the defendant agrees to cooperate in obtaining a mental health evaluation and substance abuse evaluation if requested. Paragraph 11 the defendant agrees to follow all recommendations of the psychosexual evaluation should he be placed on probation after the retained jurisdiction. So your honor where's where why isn't that why isn't that an agreement that an understanding that he was going to be treated for um for a sex offense even if he wasn't going to be subject labeled as a sex offender? Your honor I you know I I think it is incredibly important here to remember that the state did not raise this argument in its response and therefore even if this court were to find that kind of argument uh persuasive that is not the basis of what has occurred in the council. I I really appreciate uh the waiver argument and I think the waiver argument is I'm going to ask the state about that but I really would like you to address this on the merits and you've avoided that um to this point. So what all no I apologize I'm not attempting to avoid your honor's question I just think that the waiver argument is so strong it bears repeating but with regard to what he agreed to in this plea agreement the one thing that Mr. Fletcher was not aware of when he signed this plea agreement was that he would in prison be required to attend group therapy uh sex offender uh rehabilitation uh uh when he said that he would be amenable to treatment in the paragraph referring to psychosexual evaluation what did he think was going to happen? You know your honor I think that my unsophisticated client believed that those would not apply to him because he refused multiple plea offer offers from the government uh that were uh on the based on his uh you know I will not agree to this because I did not commit a sex crime indeed he even entered an Alfred plea uh still refusing uh the factual basis saying you know I did not do anything but give my stepdaughter a bath that um that is what he believed he was entering into and if the state judge windmills order um at ser 25 that's page 7 of his order footnote 2 goes through um and specifies what uh what what your client was alleged to have done and um he concludes that there is no genuine dispute that plaintiff committed the crime of felony injury to a child and describes the acts that your client committed in the bathtub with with his stepdaughter now is judge uh windmill wrong on that one? Your honor no you're the judge windmill correctly notes uh what my client was pleading to which was not a sex crime and then notes what it was that was alleged to have occurred but that is no different than what happened to the plaintiff in meal who was alleged in the indictment to have committed horrendous acts of sexual assault in the course of committing these crimes but he thereto refused to admit uh to a sex crime and this court held the state to its burden but I don't think you've dealt with what judge a felony injury that's what your client of your your client pled to and then describes the act which is which as a sexual which has a sexual component to it so yes yes your client didn't plead to a sex crime and he's not being labeled as a sex offender he's not required to register but that doesn't mean that it didn't that there wasn't some kind of sexual component to the act that for which he did plead guilty and for which he had told the state that he would submit to evaluation and treatment your honor I think that is no different than what this court recognized in Neil there and I'm quoting from the court's opinion Neil's indictment and pre-sentence investigation report included allegations that he engaged in sexual misconduct during the course of his crimes even though the sexual offenses had been dismissed and he was classified as a sex offender and assigned to a medium security classification and that's it Neil's opinion 131 at 38 22 you know there are no facts in Neil however that go along the lines of the plea agreement that we're just getting in this case indicating that Neil knew from the outset of his sentence that he was going to have to go through an evaluation and perhaps treatment related to sexual behaviors is that correct I don't think that's quite correct your honor because in Neil the soda program had already been the law and that program required anyone regardless of offense to undergo these kinds of evaluations to see if there was a sexual offense risk of those of those inmates so he was on the same notice as mr as my client who accepted I mean I'm not sure is that really fair if it's just a versus the person's into a you know specific plea agreement that they have an opportunity to look at and and make a decision about before they complete their sentencing process is that really a fair analogy to to say that generally applicable law gives you the same notice as your specific plea agreement in your specific case I want to make two points on this your honor I think that it does give the same notice because you know it's it's replete in case law and black letter law that criminal uh criminal defendants are imputed with the knowledge of the laws that they are alleged to have violated and that kind of law that goes to probationary terms and eligibility falls within that realm and to to the state argues itself that many of the probationary terms that they put in his probation uh requirements when he was uh put on probation recently don't apply here so to the extent that his own specific and one of those conditions according to the state is for example poly poly's mcgrath testing which they say has never been imposed on mr fletcher so that the state to the extent the state gets to argue oh some of those conditions certainly wouldn't apply their boilerplate I think mr fletcher should be a um the you know waiver but on top of waiver it shouldn't be imputed to mr fletcher that he might think that some of these conditions don't apply to him because he refused to plead guilty to a sex crime but in the same moment that he uh didn't plead guilty to a sex crime he's agreeing to terms that specifically reference sexual evaluation and perhaps treatment much uh much like the state said that he would require to be required to undergo poly penile polymorphic testing um in his uh probationary terms but have never exercised that right they still say that they have the right to exercise it so you know I uh I don't think it's um unfair to say that mr fletcher also thought that some of these terms would not apply because he was adamant that he was had not committed a sex crime and he was adamant that he would not plead guilty to having done so uh i'd like to reserve the remainder of my ask you on a different uh aspect of this you you say that judge windmill should have given um your client an opportunity to to amend um what exactly would this amended complaint have looked like i know it would be against these two individuals in their individual capacity but what would the claim be at that point and you're trying to draw the distinction between well uh there's no immunity if you are are supervising but there would be immunity when you're imposing the conditions if i'm understanding you correctly so what would this complaint what would this complaint look like against these two individuals so against these two individuals it would be against them and the state even recognizes that at least as to miss uh clifford she was only uh there as a super in a could plead damages claims for how she supervised his probationary term and and i want to be clear here and i you know i'm i want to answer the court's question while reserving my time so i'm just highlighting that i'm just trying to answer your honor's question but um that all we are saying in this case is that mr fletcher was allowed to have a pre-deprivation adversarial process before the state could impose these conditions the state is doing everything it can to get away with not doing that nor uh being put to its proofs on whether it could have convicted him of a sex crime in this case um and uh so the damages claims are that the law was cleared that he was entitled to due process before these uh before these conditions were imposed on him during prison so those are uh damages claims in prison the state does not dispute that he can amend on that claim and then on a probation um and he could certainly name the correct defendants for the kind of claim that is not entitled to absolute immunity but isn't that claim really about the imposition of those conditions not about supervising is it mr fletcher has argued from the beginning that having to go through with those um despite him saying i am not a sex offender and being told if you don't do this you you can choose not to do this this is in the words of miss clifford but if you don't you're going back to jail that is a supervisory um is it really supervisory i mean you're really complaining about the the the decision at the beginning of the process that this is going to be the way it's going to work the supervision is a bit you know it's there's nothing going on in the supervision in particular that is the basis for a claim so isn't that a kind of an end run around the immunity issue uh perhaps that is something that this court may eventually decide your honor but that does not mean that my client who was pro se should not be allowed to at least attempt to amend his complaint to name the correct defendants for that kind of claim which this court clearly says is not entitled to so good morning and if it may please the court deputy attorney general brian church on behalf of the state defendants in this case i want to address the court's questions but i also want to note that this court should affirm that a parole commission may constitutionally impose conditions designed to help protect society from offending behaviors and rehabilitate a parolee from offending behaviors unlike the neil case the idaho commission on pardons and parole has made no classification of mr fletcher as a sex offender it's not labeled him classified him or designated him as a sex offender and there's two i don't know what to make of that argument because the standard operating procedures that are in the record that the idaho department of corrections employees says that it will deem people to be a sex offender if they are convicted of a sex offense or if a judgment is made that they need that sort of programming in prison well two responses to that you're one we are here today on behalf of the idaho parole commission decision which is to impose the parole conditions any prison programming issue is moot at this point because mr fletcher was released from prison back in february of 2018 even prior if i recall correctly prior to when he brought his complaint in this case so are you saying that that standard operating procedure doesn't apply to the parole aspect and i want to be clear of which standard operating procedure the court is referring to here let me look at it hold on because what i'm dealing with specifically ser now this is a probation and parole number so it is 701-04-02-006 this is in the standard operating procedures manual and it talks about probation and parole and it says for the purpose of this standard operating procedure the term sex offender will be used to identify both individuals have been who have been convicted of a sex offense and individuals who have been deemed appropriate for sex offender supervision as set forth in the standard operating procedure and then it goes on to talk about how the um um sorry i'm looking for the title the designee of probation and parole supervision strategies is going to assess whether somebody needs that sort of treatment and therefore is so treated well and again just to clarify so again we're looking at ser 66 67 which are the actual parole conditions themselves that are being challenged by mr fletcher's complaint the parole conditions are the ones that are coming from the idaho parole commission now you're referencing a policy that is applicable to the department of correction as it supervises individuals but again i'm not aware of in this record of anywhere where mr of any evidence in the record where mr fletcher has been labeled classified or deemed a sex offender such that there would be some type of stigmatizing consequences from that like a sex offender registration so i mean is that your argument though that it can you can only be uh formally labeled a sex offender if you have a registration requirement that's the bottom line of your argument it's either going to be a formal classification through a sex offender type registration or some other formal uh categorization of the person in accordance with some kind of policy well i just read you one that's what i'm getting at i mean your argument is he hasn't been labeled as a sex offender this thing says you get labeled as a sex offender in two ways and one of the ways applies to him so i don't understand your argument that he wasn't given that label he clearly was well and i'm not sure that the appellant has actually raised that sop i'd have to look back at the appellant's brief but i don't recall the appellant raising that sop as the basis of their argument the other thing i would note for the court's benefit is this seems to be an internal designation used by the department of corrections to help identify which parole officers are going to be in the best position to help uh mr fletcher as he continues and continues in his parole and in his rehabilitation i get all of the of the reasons why the correction system would want to have the ability to do this i get all of that but under neil neil says that it doesn't have to be a public registration a public labeling it can be an internal structure that creates that consequence so how do you get around that case well i think two ways one i'm not certain that neil indicates that it is purely an internal structure i recognize in neil what happens there is you've got an act that allowed or authorized the parole commission to one designate persons as sex offenders and two to impose conditions based upon that namely uh conditions as to parole eligibility here at least for the parole commission that's not the case where mr fletcher was not designated a sex offender instead the parole commission issued the parole condition 66 to 67 of the ser based upon an individualized assessment of his offending behaviors and that came back to judge bybee's question at the beginning with respect to uh the motion to take judicial notice and i want to address that real quick as to even why i put that in i was concerned here by uh our briefs reference to the fact that uh mr fletcher had rubbed the vaginal opening of a four-year-old child and trying to determine where that came from and determined based upon the amended information that the amended information alleged it was either a five-year-old or eight-year-old child part of the confusion here though came from and it's going to be approximately ser 38 or 39 and mr fletcher's reply to the motion for summary judgment at the district court uh and it's actually page 41 excuse me and there's a paragraph where it says truth mr fletcher gave the victim a bath and washed her with too much soap at age four which was the complaint in the discovery that's why i wanted to make sure the record was clear that the actual amended information in this case was based upon an age five or age eight minor child regardless the plea here was to the felony injury to a child to it uh of the age of five and or eight years of age by rubbing the vaginal opening of the child's name or child's initials at least as it was now with respect to judge by these questions uh the state i think did raise uh the issues here with respect to it i'm pointing to pages 8 7 24 and 28 of the state's brief page 7 we note that uh mr fletcher had to participate in the psychosexual value uh evaluation page 8 we note that mr fletcher voluntarily entered into the parole conditions agreement page 24 and 28 we've got additional arguments there about mr fletcher completing the psychosexual treatment or evaluation excuse me and treatment in prison and at page 28 we've got an argument here that this case is unlike the neil prisoner but more like the martinez prisoner in neil specifically because mr fletcher pled guilty to rubbing the vaginal opening of the child now the one thing that's different about neil and this is actually from the appellant's further excerpts of record and i'd point the court to page 33 and 32 and this is the first one of the first charges the factual basis of the charge for mr neil in that case was i took jewelry without permission from nolani pollock or pocock the other charge was based on i and other defendants this is at fer 28 i and other defendants kidnapped terrorized and assaulted michael warner clearly a very different scenario from the charge that we have here of rubbing the vaginal opening which is why the state has argued that that was that plea agreement to that charge was sufficient for due process purposes even if this court believes there was a liberty interest at stake with respect to those questions i did want to touch chief judge seaborg on your question about the amended complaint as well the amended complaint the defendants have won argued that the district court properly denied or dismissed the claims against uh the defendants uh jones and clifford the executive director of the pardons of parole and the district for deputy manager we argued that those were correctly dismissed because mr fletcher's complaint itself as we've quoted in the brief states that they are being sued in their official capacity isn't that awfully harsh on a pro se litigant uh it's a very technical line to draw when you look at the nature of the claim and it it's conducive i'm not saying it would ultimately be um a viable claim but it's it's it's plainly he's going after them in a individual capacity so to say he checked the box or whatever he did is isn't that kind of a it doesn't that run into problems with the liberality we're supposed to accord to pro se litigants well a couple of responses to that your honor one generally the liberality or their presumption of suing somebody in individual capacity as i understand comes from when the complaint is not clear into what capacity a person is being sued uh here it's very clear again because it's written in mr fletcher's own hand that he is suing them and this is at ser 136 suing them in their official capacity the court would have to some in some respects that is uh i mean it may be naivete on his part as to what as to why that is to why that's important he may and he may not even understand the legal distinction between doing that it may be simply a way of designating who precisely it is that he's that he's suing these are common names uh he wants to make clear that these are that these are are people who have uh exercised some control over him and the i mean that seems it seems a really really tight reading of this complaint and that you would not allow him to the opportunity to amend well let me respond to that in twofold one uh the reading is important here because of the relief he is seeking with respect to the injunctive relief remember it's the injunctive relief against the official in this case the that would grant some relief here removing conditions and then right below that he is also seeking 150 000 in damages and i agree your honor he certainly is but the problem is the court district court shouldn't be uh changing what the actual then you can allow him to amend but this but he's obviously seeking damages he can't seek damages he can't seek injunctive relief against them in their individual capacity so i mean he's kind of he's kind of been whipsawed here on some a lot of people don't understand but it's pretty obvious what he wants to do here and that this is it's not an unusual this would not be an unusual suit it wouldn't be like oh we didn't realize that he really wanted to sue them in their individual capacity of course he does sure and i understand your honor's point but i guess my point is we don't want to misread or mischaracterize what he actually wrote here and change what he wrote but the district court took it can i just follow up on this question i i understand your argument i do think it's it's hyper technical because to a lay person i think they would say i want to sue this person for what they did as a because they're an official governmental officer uh not and i'm not suing them for their personal activities not that they understand the fine distinction between officer official capacity and individual capacity but putting that aside are you also making a futility argument i i am your honor that's based upon because the district court went there itself recognizing that uh and as you've pointed out any claim here is really traced back to the imposition of these conditions themselves thornton certainly recognizes that some arbitrary unconstitutional enforcement of a otherwise valid condition could result in a claim but that's not what we have here from mr fletcher mr mr fletcher's full complaint is the fact that the parole commission said he had to complete a sex offender evaluation he couldn't access pornography and the other conditions that he's challenged that's why it's futile here because these individuals even if they were sued in their individual capacity are simply there on you know because they are the ones who've got these conditions here they're the ones who've got these conditions imposed in or just monitoring them really it's a challenge to the imposition of these conditions your honor that's really at issue is there any case law that develops that concept that you're aware of that well it really isn't a supervision issue it's a it's a imposition issue and if all the uh the probation officer is doing is just following the uh the provision as intended that that doesn't implicate supervision for purposes of a 1983 case sure your honor i think i was basing my understanding on a thornton case the district court itself had cited i would have to go back and do additional analysis of other cases that have looked into that if the court wanted to i can certainly provide that but i think thornton's clear enough that anytime it's the actual conditions that are imposed that's being challenged that that is subject to absolute immunity and if i could also address the court's order regarding the mootness issue i think it's clear as of may 2023 or may 20th of 2023 not only do mr uh fletcher's parole conditions in his commitment to the idaho border correction ends such that he is going to be a free man as of may 20 2023 and so any objective or declaratory relief would be moot uh as of that date obviously to the extent the panel believed that there was a damages claim uh yes technically it's not moot but as i've noted before one it's either subject to dismissal because he named them in our official capacity and subject to dismissal under will or it's subject to dismissal on the basis of the futility argument based on their absolute judicial immunity and we haven't even had a chance yet of course if the court allows us to go back to address qualified immunity here given the very different circumstances here between neil and this case and so with that i think i'll i have a couple additional questions to follow up on some of the questions that judge bybee had for your friend in this case paragraph 11 of the plea agreement talks about the defendant agrees to follow all recommendations of the psychosexual evaluation should he be placed on probation after the retained jurisdiction so that didn't happen here he was the court didn't retain jurisdiction probation never happened he's sent to prison or talking about parole so my question is the parole department had the ability to impose the conditions that it had because he had the conviction and then the rule the idaho rules allow it to look at the facts underlying the conviction in figuring out what treatment that sort of thing so i is your argument then that even though his plea agreement specifically called out what might happen on probation that that's a distinction without a difference here even though it happened through the parole process well i think there are two different arguments to that if i may respond to your question i think the two different arguments one the fact of the plea agreement and the amended information that was also put in through the judicial notice put him on notice that he was pleading guilty to conduct that is certainly sexually offending behavior i think we can all agree rubbing the vaginal opening of a minor child certainly qualifies as that so that's the first basis for why the parole commission here can act as your honor noted under 20 idaho code 21004 and it's implementing regulations and looking at the conduct that underlies the conviction itself and conduct that he entered an alfred plea which is a guilty plea in the ninth circuit too the second thing is i think i would agree with you that there was at least a recognition not only through probation but through some type of out of prison monitoring there in that case through probation specifically but here through parole where he could be subject to certain conditions that related to the sexual nature of the fence even though it's not a registrable sex offense under the idaho code well that's the thing that that's the rub here for me because it seems a little bit unfair triggering perhaps a due process idea that the state can get everything it wants in terms of the control over what it deems to be a sex offender even though it didn't get a sex offense conviction i don't think that's unfair your honor because the purpose here of the parole is to one rehabilitate the offender two to protect society and three to discourage uh behavior that might lead to reoffending but the state knew from the outset he didn't want a sex offense that's that's why the negotiations happened the way they did that's why the the plea was what it was he wasn't going to plead to a sex offense that mattered to and yet here we are in this case and the state's position is it doesn't really matter that you didn't plead to a sex offense we get all of the authority we would have had anyways how is that fair well i think it's fair because we're not taking a hyper technical reading of the plea agreement and the charge here in the sense of again i agree he got a good plea deal in the sense of getting a felony injury to a child but that felony injury to a child was specifically charged as the conduct we've described earlier it's we have to look at this conduct in the terms of the whole not just this hyper technical reading of what is a registrable offense because as i understand the court's precedent it's not just whether it's a registrable offense or not that matters in fact that is plainly appellant's argument in this case is it's more than just the fact that he was required to read not required to register if that's the case then we get to agree he was not charged with a convicted of an offense for which he has to register but the offense was specifically charged as rubbing the vaginal opening of a minor child and that's sexually offending behavior your honor any further questions for these reasons we ask that you affirm thank you very much all right mr woofter we took your colleague over so we'll give you three minutes rebuttal thank you your honor let me just make a few points um the state nowhere argued that it would be futile for mr flesher to amend his complaint to plead damages claims for his time in prison and it was their purtain to do so so at a minimum this court should remand with leave to repeat that claim uh to uh as the state argued the plea anneal was that he quote kidnapped and inserting the unnamed juvenile male's penis into the victim's mouth uh and then uh third uh the state itself has now acknowledged that unconstitutional enforcement of parole conditions is not entitled to absolute immunity and he insert and mr and and the state did not say in its uh rebuttal that um mr flesher could not plead such claims that such claims would be futile to plead um uh and uh judge forest i did want to highlight that um you were absolutely correct about uh the parole conditions here that said that he can be labeled a sex offender uh with uh by being convicted of a sex offense or if a judgment is made that they need that kind of programming that is exactly on all fours with the program that was uh that was deemed uh unconstitutional in meal without pre-deprivation process um and at bottom all we have argued from the outset is that mr flesher and those like him are due adversarial process before they can be required to undergo these invasive sex offender treatments when they are not convicted of a sex crime none of us would undergo such treatment unless we were required to do so under the coercive power of the because of how much stigma is attached to that kind of uh that kind of label uh and if it wants to require this of mr fletcher it either had to obtain a sex offense conviction or provide him adversarial process beforehand it cannot be that adversarial process is too much to ask of the state before it can take away an individual's liberty counsel do you agree that if we can't get a at least as to everything but damages this case is moot uh uh i think if this court chooses not and we would like to affirmatively ask right now that in enjoying these conditions uh pending the decision um we didn't make that motion because um you know it wasn't until late in the day that this court asked the question uh to begin with uh but short of that we do agree that at the very least there must be a remand here for repleting the damages claims even if a decision does not come from this court before may 21st and it is may 21st i believe not may 23rd all right thank you your honors all right thank you for your argument the matter of fletcher versus the idaho department of corrections is submitted
judges: BYBEE, FORREST, Seeborg